UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**DEMETRIUS ADAMS**                                                                                      **PLAINTIFF**

**v.**                                                                          **CIVIL ACTION NO. 5:17-CV-P161-GNS**

**SHASTINE TANGILAG et al.**                                                                       **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff, Demetrius Adams, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons set forth below, the complaint will be dismissed.

## I. SUMMARY OF CLAIMS

Plaintiff is a prisoner at the Kentucky State Penitentiary (KSP). His complaint arises out of alleged lack of treatment and negligent medical treatment of a hernia. He names as Defendants Correct Care Solutions (CCS), which provides medical care to Kentucky prisoners, and the following CCS employees in their individual and official capacities: Dr. Shastine Tangilag, Dr. Louis Forte, Nurse Brenda Beehler, and Nurse Tania Pineiroa. He also names as Defendants APRN Denise Burkett, Health Service Clinical Director of the Kentucky Department of Corrections (KDOC); Baptist Health of Paducah; and two employees of Baptist Health -- Dr. Carla Pierola and Nurse Robert Timothy. He also sues all unknown defendants with policy making authority for CCS; all unknown insurers and/or underwriters for Defendants; and all unknown defendants with policy-making authority for Baptist Health, Paducah. Plaintiff attaches several documents to his complaint, both health-care grievances and medical records.

Plaintiff alleges that he has complained of abdominal pain for several years since at least September 18, 2015. A KDOC medical record attached to the complaint states that Plaintiff was seen by a nurse on that date for "mid epigastrc pain." The "Assessment" portion of the record provides: "normal bowel sounds, non tender to all four quadrants of the abdomen." It also provides that Plaintiff stated that the pain had been in his "upper mid abdominal area, lower gastric region . . . since onset early this morning before breakfast" and "PT did have normal BM after onset of pain this morning." That medical record shows that Plaintiff was given two medications, lidocaine and milk of magnesia, and told to contact "medical" if pain persisted or worsened.

Plaintiff next alleges that on February 8, 2016, he complained about hernia pain[1] and was seen by non-Defendant APRN Karen Ramey. A KDOC medical record from that date states that Plaintiff presented with right groin pain and "[a]s he normally does, pt. states he reduced the hernia himself but that it would not remain reduced." That medical record also states that Plaintiff was observed to not be wearing his support. The Assessment/Plan for Plaintiff's "right inguinal hernia" was: "Pt encouraged to wear support[;] pt educated to avoid any heavy lifting, straining, pulling, etc.; as long as hernia remains reducible will cont to monitor."

According to the complaint, on March 7, 2016, Plaintiff again complained about hernia pain and was again seen by APRN Ramey. The "Symptoms" portion of a KDOC medical record from that date states: "Pt seen early last month for pain with hernia. He was evaluated at that time and hernia was reducible. Pt. does not aggravate hernia by heavy lifting or straining and began wearing his support again. Hernia remains reducible." The "Action/Plan" for Plaintiff was as follows: "long discussion with pt re: warning signs of incarcerated hernia. As long as hernia remains reducible, we will cont to monitor. Encouraged him to keep wearing his support,

---
[1] The documents attached to the complaint state that Plaintiff had a history of right inguinal hernia repair.

as he reports improvement in pain and discomfort. [H]e denied the need for a second opinion with Dr. Amos."

Plaintiff next alleges that nearly seven months later, on October 3, 2016, he felt "a slight pull that began to expand in his abdomen" creating a "sharp and constant pain." He states that he "made it to the legal office" where a corrections officer contacted Registered Nurse Bruce Bauer,[2] who explained over the phone that Plaintiff should push the hernia back in and put a bag of ice over the area. He alleges that during this time he was "lying on the floor sweating profusely while screaming in pain and agony." He states that during this time another corrections officer arrived on the scene, contacted "medical," and explained the situation, whereupon a wheelchair was brought to transport Plaintiff to medical.

Plaintiff states that, once at medical, Defendant Dr. Tangilag observed the area, confirmed the need for immediate surgery, and made preparations for Plaintiff to be transported to the hospital. He alleges that during his "long wait" he was given several injections for pain, but the pain did not subside. A KDOC progress note from Defendant Dr. Tangilag shows that Plaintiff was brought to medical around 1:00 p.m. and examined, and that it was decided that a "GS eval" and "CT scan" were needed to rule out "incarceration" hernia. That progress note also provides "called Baptist ER and spoke with Dr. Mabry. Advised to call surgeon (Dr. Tyrrel) – left message with his asst. At 3 PM, still no call from the surgeon. Called Dr. Mabry at ER. Was advised to send inmate to ER and he will contact Dr. Tyrell."

Plaintiff states that around 3:30 p.m., he was transported to Baptist Hospital in Paducah. There, he was seen by Defendant Dr. Pierola. He states that at around 10:45 that evening "the attending physician or staff representative made the conscience decision to turn the Plaintiff

---

[2] In the body of the complaint, Plaintiff refers to Bauer as a Defendant. However, he is not listed as a Defendant in the caption of the complaint.

away and send him back" to KSP. He states that Defendant Dr. Pierola instructed him to push the hernia back in place and apply ice.

The KDOC progress note from October 3, 2016, at 11:45 p.m. states that Plaintiff was returned to KSP with "no new orders F/U to make an apt. with DR." That progress note stated that Plaintiff's abdomen was "soft and nondistended with bowel sounds x4, hypoactive no tenderness or guarding noted," and that Plaintiff reported his pain to be level "1." That note further states that Plaintiff was transferred back to his cell with instructions to call for medical assistance if needed and to take ibuprofen, which Plaintiff had a supply of, as needed.

Plaintiff alleges that on the morning of November 21, 2016, he was stricken with the same pain, but even more severe than before. A corrections officer contacted medical who advised Plaintiff to place an ice pack on the area and push the hernia back in. However, upon seeing the amount of pain Plaintiff was in, the officer called medical again and explained that the injury was serious. The officer was instructed to tell Plaintiff to report to medical once it opened. Plaintiff alleges it took him a long time to walk to medical because of his intense pain. He states that once there Defendant Dr. Forte saw Plaintiff "and decided to shove the hernia back in," causing Plaintiff "massive" pain in his abdomen. Plaintiff states that he begged Defendant Dr. Forte to stop shoving his fingers in the area, eventually pushing his hand away.

Plaintiff alleges that Defendant Dr. Forte "finally ordered that the Plaintiff be taken out for surgery because the hernia could not be pushed back in his abdomen." Plaintiff was taken to the Caldwell Medical Center in Princeton, Kentucky, where a surgeon immediately took him into surgery. Upon waking from surgery, Plaintiff was told by the surgeon that in addition to the hernia, surgery revealed that Plaintiff had a strangulated intestine, which the surgeon also repaired. Plaintiff states that after four days in the hospital, he was returned to KSP where "there

was no follow ups to check the progression of his surgery or to see if there were any more complications from surgery."

Plaintiff alleges that Defendants Tangilag, Forte, and CCS violated his Eighth Amendment rights and that Defendants Baptist Health of Paducah, Pierola, and Mabry violated Section 17 of the Kentucky Constitution and committed the tort of medical malpractice. The complaint contains no allegations against Defendants Beehler, Pineiroa, or Burkett but does ask for declaratory and injunctive relief "in the form of an ORDER compelling medical treatment as needed and described by Dr. Carl Hinton."

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

5

*Eighth Amendment claims*

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). To do so, a prisoner must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). In other words, a court generally will not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Thus, a difference in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment is not enough to state a deliberate-indifference claim. *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). Moreover, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

The allegations and attachments to the complaint show that when Plaintiff complained of abdominal pain on one day in September 2015 and hernia pain on one day in February and then in March 2016, he was seen on those days by a registered nurse or an APRN. He was examined and treated with medicine to alleviate the abdominal pain in September 2015. With regard to his

6

two visits to medical in early spring 2016, Plaintiff again received treatment. The nurse determined that the hernia was still reducible and so would be continued to be monitored; explained to him the warning signs of an incarcerated hernia; and encouraged him to wear his support, which he reported helped his pain.

When, nearly seven months later, on October 3, 2016, Plaintiff felt "a slight pull that began to expand in his abdomen" creating a "sharp and constant pain," he was taken by wheelchair to medical, where he was seen by a doctor, Defendant Dr. Tangilag. Defendant Dr. Tangilag examined him, confirmed the need for immediate surgery, and made provisions for him to be sent to the ER. However, he was seen by two doctors, Defendants Pierola and Mabry, who apparently disagreed that surgery was necessary at that time. Although he was returned from Baptist Health without having had surgery, when he was returned to KSP later that evening, the KDOC progress note stated that Plaintiff's abdomen was "soft and nondistended with bowel sounds x4, hypoactive no tenderness or guarding noted," and that Plaintiff reported his pain to be level "1."

A month and a half later, on November 21, 2016, when Plaintiff was stricken with more severe pain, he was seen by a doctor, Defendant Dr. Forte, who attempted to reduce Plaintiff's hernia, which did not work and was very painful to Plaintiff. When Defendant Forte's attempt to reduce the hernia failed, Defendant Forte ordered Plaintiff to be taken for surgery. Plaintiff was taken to an outside medical center where he was immediately operated on, during which both his hernia and a newly discovered strangulated intestine were fixed.

Plaintiff has not shown that Defendants Dr. Tangilag, Dr. Forte, and CCS violated his Eighth Amendment rights. He received treatment each time he asked for it. Simply because Defendants initially treated his hernia conservatively rather than with surgery is merely a

disagreement with the treatment he received rather than a lack of treatment. *See Woods v. Ameji*, No. 09-2195, 2011 WL 673990, at *11 (C.D. Ill. Feb. 16, 2011) ("Non-surgical remedies, designed to alleviate the inmates' pain from the hernia are not a violation of the Eighth Amendment.").

Finally, although Plaintiff alleges that when he was returned to KSP "there was no follow ups to check the progression of his surgery or to see if there were any more complications from surgery," he does not allege which Defendant, if any, purportedly failed to follow up with him and does not allege any harm from the lack of follow up or even what follow up he believes was necessary. Plaintiff has failed to state an Eighth Amendment claim with regard to his medical treatment. Consequently, his request for injunctive relief in the form of compelling his medical treatment to be as prescribed by an outside doctor also fails.

### *Supplemental state-law claims*

Because Plaintiff's federal-law claims will be dismissed, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3). His state-law claims will be dismissed without prejudice.

### III. CONCLUSION

For the foregoing reasons, this case will be dismissed by separate Order.

Date: February 22, 2018

**Greg N. Stivers, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
　　Defendants
　　General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4416.009

8